*86 N. J. L.*                    In re Ross.

IN THE MATTER OF THE PETITION OF ROBERT S. ROSS
ET AL., PRAYING THAT CHAPTER 90 OF THE LAWS OF
1914 BE DECREED NULL AND VOID.

Argued June 5, 1914—Decided October 13, 1914.

A bill, which was a revenue measure, having been introduced and
passed by the senate, was sent by it to the house of assembly
for the latter's consideration and action. The house of assembly
referred the bill to a committee, which reported it back without
amendment, and the bill had a second reading. Subsequently,
the bill was recommitted, and the committee reported a bill which
had the title of "Assembly Committee Substitute" for the senate
bill, and the house of assembly proceeded to deal with it as an
original bill, and after three separate readings, passed it and sent
it to the senate, where it was also given three readings, was
passed, and then approved by the governor. *Held*, that although
the bill as originally introduced was a senate bill, yet the action
of the house of assembly in reporting and passing a substitute bill
was a discarding of the senate bill, and the substitute bill was a
separate and distinct measure, first passed by the house of assem-
bly, and then by the senate, and was a valid enactment of the
legislature under the constitutional requirement that all bills for
raising revenue shall originate in the house of assembly.

On petition.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON,
MINTURN and KALISCH.

For the petitioners, *Fisk & Fisk, Gilbert Collins* and *John
R. Hardin.*

For the state, *John W. Wescott,* attorney-general, *Herbert
Boggs,* assistant attorney-general, and *Carlton B. Pierce.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The present petition is filed
by Robert S. Ross and William J. Field, as citizens of the
state, under authority conferred upon them for that purpose
by section 3 of the act of March 3d, 1873 (*Comp. Stat., p.*

4978), entitled "An act providing for decreeing and making known that certain laws and joint resolutions have become inoperative and void." The constitutionality of that statute has already been declared by this court. *In re Public Utility Board,* 83 N. J. L. 303; and its scope commented upon, *In re Jaegle, Id.* 313. By their petition Mr. Ross and his associate attack the validity of chapter 90 of the laws of 1914, upon the ground that its passage through the two houses of the legislature did not comply with constitutional requirements; and ask this court to exercise the power conferred upon it by the act of March 3d, 1873, and decree the legislation to be null and void.

The purpose of the statute thus attacked is to provide a tax upon the stock of banks and trust companies, and the distribution of the moneys raised by such taxation between the counties and the taxing districts in which the banks and trust companies of the state are severally located. The averments of the petition are that this statute is a revenue measure; that it originated in the senate; and that because of the fact that it so originated, its enactment was in violation of paragraph 1 of section 6 of article 4 of the state constitution, which provides that "all bills for raising revenue shall originate in the house of assembly; but the senate may propose or concur with amendments as on other bills."

It needs no argument to demonstrate that a statute of the character of that involved in the present proceeding is a revenue measure; and, indeed, it is conceded to be such by the attorney-general and his associates. It is further conceded by them that if the bill in fact is one which originated in the senate, it is void as violative of the constitutional provision appealed to by the petitioners. It is insisted, however, on behalf of the state, that the averment of the petition that this statute so originated is contrary to the fact.

The history of the legislation is as follows: On the 16th day of February, 1914, a bill was introduced into the senate, the material provisions of which coincided with those contained in chapter 90 of the laws of that year; it passed the senate on the 10th of March, and on the next day was de-

livered to the house of assembly; on the same day that house referred the bill to the committee on taxation, and that committee forthwith reported it back to the house favorably without amendment, and the bill was read a second time by its title. On the 18th of March the bill was recommitted by the house to the same committee, and that committee promptly reported a bill entitled "Assembly Committee Substitute for Senate Bill No. 176" (that being the number of the bill which had been sent over from the senate). The house accepted the substitute as reported, and proceeded to deal with it as an original bill—that is, passed it on three separate readings as required by the constitution, having slightly amended it during its passage. The substitute bill thus passed was sent to the senate, and that house, instead of dealing with the bill as one which had originated there, and merely concurring in, or disapproving of, the house amendments, treated it as a bill originating in the house of assembly, gave it three readings, and finally passed it. The bill then, in its regular course, went to the governor for his approval, and received it.

The petitioners do not dispute the accuracy of this statement of facts, but insist that, because the bill as passed is practically a *replica* of that which was introduced into and passed by the senate, and then sent to the house, and because the committee in reporting it entitled it an assembly committee substitute for a senate bill, instead of "Assembly Bill No. ," it was not an original bill introduced into the house by its committee, but merely an amendment of a pending senate bill.

The fact that the bill reported by the house committee was practically identical with that which was passed by the senate and sent by it to the house, has no bearing upon the question of the validity of the statute, for it is perfectly manifest that both houses intended to pass a statute of the tenor and effect of Senate No. 176; and that is what they did, whether the assembly substitute is an original bill or a mere amendment of that which came to it from the senate.

Nor is the fact that the house committee, in reporting the bill, designated it as a substitute for No. 176, at all conclusive

on the question whether what was reported was an original bill, or an amended senate bill. We are told by counsel for the petitioners that it is universally agreed by writers on parliamentary rules, and by lexicographers, that the word "substitute," when used in legislative proceedings, has a fixed and invariable meaning, viz., the amendment of a pending bill or resolution; and that, therefore, we are compelled, in considering the constitutionality of this law, to declare that Assembly Substitute for Senate No. 176 is nothing more than an amendment thereof. If so broad a statement has been made by the writers referred to we beg leave to dissent from it. The meaning to be given to a word used by a legislative body must be that which has been impressed upon it by the body itself in its user. It may be that, as a general rule, the word "substitute" is the equivalent of "amendment," in parliamentary definitions, and will ordinarily be so accepted; but when it is manifest that a legislative body, in a given case, uses it as expressive of an entirely different meaning, namely, the discarding of a measure then under consideration, and the putting of a new and independent measure in its place, the general definition of parliamentarians and lexicographers must give way, and the meaning given to the word by the body using it must be accepted. We, therefore, consider the situation which existed at the time of the reporting by the committee of this assembly substitute. Senate Bill No. 176 was, plainly, a bill for raising revenue, and its introduction in, and passage through, the senate, was, therefore, in contravention of the constitutional provision already adverted to. The only explanation of this course of action by the senate which can be entertained is that, in the hurry of business, this mandate of the constitution was overlooked, for no one will suggest that the violation was intentional and deliberate. The action of the house of assembly on the senate bill prior to its recommittal to the house committee on taxation is only explainable on the same theory. When it is remembered that many of the members of each house were men trained in the law, it can readily be conceived that after the original report of the house committee upon the senate bill, some one or more of them waked

up to the fact that such a bill could not constitutionally originate in the senate, and that, if finally passed and approved as a senate bill, it would be an absolute nullity. If it was desirable that a law of the purport of Senate Bill No. 176 should take its place on the statute book, it was necessary that its practical counterpart should originate in the house. Bearing in mind that every presumption is in favor of the constitutionality of this law, we think it must be assumed that the house of assembly, having perceived that Senate No. 176 violated this constitutional provision, sent it back to its committee on taxation for the purpose of having that committee report an original bill to take the place of the unconstitutional one which had come to it from the senate; and that the purpose of its committee in thereafter reporting to the house a bill which it entitled "Assembly Committee Substitute for Senate Bill No. 176," was to lay before that house an original bill (*i. e.,* a bill originating in the house of assembly) to take the place of that which had been condemned. The subsequent action of the house of assembly upon this "substitute" strengthens this assumption; and the action of the senate when this "substitute" was sent to it by the house, in passing it as an assembly bill instead of treating it as a senate bill which had been amended in the assembly, and merely concurring in the amendments, is persuasive that it accepted this substitute as an assembly bill because its attention had been called to the fact that a revenue bill could not constitutionally originate in the senate, and that its bill No. 176 was void.

It is argued by counsel for the petitioners that, even if it be conceded that the method of dealing with this bill by both houses would ordinarily compel the conclusion that it was meant, in designating it as a substitute, to introduce and pass it as an original assembly bill, yet the fact that at the time when it was reported by the house committee the period when, under the rules of the house, a new bill could be introduced therein had expired, prevents such a conclusion in the present case. But the house had power to suspend its own rule, and there is nothing in the proofs before us to suggest that this course was not taken by it. The presumption is in

favor of orderly procedure by that body. Moreover, if it had been shown that there had been no suspension of the rule in this case, we would hardly be justified in assuming that the house of assembly had violated the constitutional mandate by passing a revenue bill which had originated in the senate, rather than its own rule regulating the time limit within which such bills should be introduced.

On the undisputed facts which we have before recited we have no doubt that both the house of assembly and the senate considered that this assembly substitute was an original house bill, and not an amendment to a senate bill; and the fact that they so dealt with it makes the title which they saw fit to give to it of little materiality. Its essential character cannot be affected by the mere inaccurate use of words of description. The question with which we are concerned is not what the title of the bill which came from the house committee ordinarily suggests, but what, in fact, that bill was; and we have no doubt that it was an original bill, passed first by the house of assembly and then by the senate. This being so, it was a valid enactment, and the attack upon it by the petitioners must fail.

The petitioners' petition will, therefore, be dismissed.